IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-CR-295-02 |
| ANDRE COLEMAN | : | |

**SURRICK, J.**                                                                                           **DECEMBER 1, 2005**

## MEMORANDUM & ORDER

Presently before the Court is Defendant Andre Coleman's Motion To Suppress Physical Evidence (Doc. No. 43). For the following reasons, Defendant's Motion will be denied.

### I.  FACTUAL BACKGROUND

Defendant is charged with one count each of criminal conspiracy, attempted bank robbery, armed bank robbery, and use of a firearm during or in relation to a crime of violence. (Doc. No. 43 ¶ 1; Gov't's Opp'n to Def.'s Mot., Doc. No. 50 at 1.) These charges arise out of the November 22, 2004 robbery of the Univest National Bank in Lower Southampton, Pennsylvania. (Doc. No. 50 at 1.) After the robbery, authorities radioed "flash information" to law enforcement personnel in Lower Southampton and surrounding areas. (Nov. 29, 2005 Tr. at 15, 43-44.) This transmission alerted police to look for two bank robbery suspects, a black female wearing a pink shirt and a black male, traveling in a black Lexus sedan with tinted windows. (*Id.* at 14, 44.)

Pennsylvania State Trooper Kyle Hartman heard the "flash information" while patrolling on Woodhaven Road in Philadelphia. (*Id.* at 4.) As he proceeded northbound on Roosevelt Boulevard, Trooper Hartman anticipated that he might see the vehicle used in the robbery traveling southbound towards Philadelphia from the area of the bank. (*Id.* at 7.) Approximately

four minutes after hearing the "flash information," Trooper Hartman spotted a "dark luxury vehicle with tinted windows" traveling southbound on Roosevelt Boulevard. (*Id.* at 8.) Trooper Hartman reversed direction in order to follow the vehicle. (*Id.* at 8-9.) He observed that the tinted windows on the vehicle violated the Pennsylvania Motor Vehicle Code. (*Id*. at 9.) Without Trooper Hartman having to activate the overhead lights or siren on his car, the dark luxury vehicle pulled into the parking lot of a closed diner. (*Id.* at 10.) Trooper Hartman followed the vehicle into the parking lot and positioned his patrol car perpendicular to the stopped car, which he later determined to be a black Infiniti. (*Id.* at 10, 32, 47.)

  Once stopped, Defendant, who had been driving the Infiniti and thought that his car might be overheating, exited the vehicle to check on its condition. (*Id.* at 11.) Trooper Hartman directed Defendant to get back into his vehicle. (*Id.* at 11.) Trooper Hartman then approached the vehicle to request Defendant's identification, registration, and insurance. (*Id.* at 12, 28.) Trooper Hartman informed Defendant that he would be issued a warning because the tinted windows violated the Motor Vehicle Code. (*Id.* at 11.) At that time, Trooper Hartman noticed the presence in the vehicle of a black female passenger, wearing a pink shirt, and a black male passenger. (*Id.* at 11, 28.) Because the vehicle and the passengers fit the description provided in the "flash information," Trooper Hartman decided that additional investigation was necessary, and he detained the vehicle and passengers until backup arrived. (*Id.* at 12, 32-34.)

  Within ten to fifteen minutes, other law enforcement officers arrived on the scene. (*Id.* at 13.) The local police were accompanied by two witnesses, both of whom were employees of the bank that had been robbed. (*Id.* at 54, 60.) The employees identified the male and female passengers in the black Infiniti as the individuals involved in the bank robbery. (*Id.* at 48.)

Based on these identifications as well as the description of the getaway vehicle and the perpetrators of the robbery, a search warrant was obtained to search the black Infiniti. (*Id.* at 49-51.) When the warrant was executed, the police recovered from inside the vehicle the money stolen from the bank, including certain marked "bait bills," a Ruger revolver, six rounds of ammunition, and clothing matching items worn by the robber. (*Id.* at 67.)

**II.     DISCUSSION**

In the instant Motion, Defendant seeks to suppress the introduction at trial of the physical evidence found in the Infiniti. (Doc. No. 43 ¶ 7.) Defendant contends that Trooper Hartman was not justified in detaining the vehicle while awaiting the arrival of other police personnel. (Nov. 28, 2005 Tr. at 73.) The "flash information" identified two individuals and a Lexus, whereas Defendant was driving an Infiniti with three occupants. (*Id.* at 73-74.) Defendant argues that any reasonable suspicion that tied his vehicle to the bank robbery "had been dissipated by the physical characteristics of the car and the persons," eliminating any justification for the prolonged detention. (*Id.* at 75.) Defendant argues that because the detention was unlawful, the evidence subsequently seized by police is inadmissible. (*Id.*)

There is no dispute that Trooper Hartman's initial stop/detention of Defendant's vehicle was lawful.[1] The windows of the Infiniti were so darkly tinted that Trooper Hartman could not see inside. (Nov. 28, 2005 Tr. at 8.) Such tinting is a violation of the Pennsylvania Motor Vehicle Code, 75 Pa. Cons. Stat. § 4524(e)(1). This violation provided a justification for stopping and/or detaining the vehicle for the purpose of issuing a warning or citation. *See*

---

[1] The testimony established that Defendant's vehicle pulled into the parking lot and stopped on its own, not at the direction of Trooper Hartman.

*United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) ("A police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation.")  Defendant's argument focuses on the detention of the vehicle and its passengers, which lasted ten to fifteen minutes, during which Trooper Hartman awaited the arrival of other police personnel.  (Nov. 28, 2005 Tr. at 8.)

"After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation."  *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003) (citing *United States v. Johnson*, 285 F.3d 744, 749 (8th Cir. 2002)).  While this "'reasonable suspicion' must be more than an inchoate 'hunch,'" the police officer need only "articulate some minimal, objective justification."  *Id.* (citing *United States v. Sokolow*, 490 U.S. 1, 13 (1989)).  In assessing whether a valid basis for "reasonable suspicion" exists, the court must "consider the totality of the circumstances, in light of the officer's experience."  *Id.* (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

The facts of this case clearly indicate "reasonable suspicion" to justify additional inquiry.  The "flash information" described two individuals, a black female wearing a pink shirt and a black male, traveling in a black Lexus sedan with tinted windows.  (Nov. 29, 2005 Tr. at 14, 44.)  The automobile driven by Defendant was also a black luxury sedan with tinted windows.  (*Id.* at 8.)  Trooper Hartman spotted Defendant's vehicle minutes after the radio transmission and in close geographic proximity to the scene of the robbery.  (*Id.*)  Upon approaching the vehicle, he noted that the occupants included a black male and a black female wearing a pink shirt.  (*Id.* at 11, 28.)  Based on the totality of these circumstances, Trooper Hartman had reasonable suspicion

to extend the lawful detention of Defendant's vehicle by ten or fifteen minutes in order to conduct additional investigation.[2]

Defendant argues that such reasonable suspicion should have "dissipated" due to the discrepancies between the "flash information" and the characteristics of Defendant's vehicle. (*Id.* at 75.)  We disagree.  The "flash information" identified two individuals in connection with the robbery.  It did not, however, indicate that *only* two individuals were traveling in the black sedan seen leaving the bank.  The presence of three persons in Defendant's car does not militate against a finding of reasonable suspicion.  Moreover, while Defendant's car is not a Lexus, as described in the "flash information," it is a luxury vehicle.  It is a black Infiniti, which is a luxury sedan, and it had tinted windows.  This difference in the make of the vehicle alone does not change the outcome of the inquiry given the totality of the circumstances.[3]

We are satisfied that Trooper Hartman possessed the requisite reasonable suspicion to detain Defendant's vehicle and its passengers in order to conduct further investigation into their involvement in the Univest National Bank robbery.  Trooper Hartman's actions in this matter did

---

[2] We need not discuss the possibility that the brief detention of Defendant's vehicle was independently warranted by the traffic violation.  While it is "well settled" that a police officer executing a lawful stop "may exercise reasonable superintendence over the car and its passengers," *Bonner*, 363 F.3d at 216, this determination is unnecessary since Trooper Hartman also possessed reasonable suspicion to investigate the connection to the bank robbery.

[3] Our determination is not affected by *United States v. Kithcart*, 134 F.3d 529 (1998).  In that case, the Third Circuit assessed whether "probable cause" existed—"reasonable suspicion" requires a less demanding inquiry.  *Kithcart*, 134 F.3d at 530; *Bonner*, 363 F.3d at 217.  In finding no probable cause, the court focused on the discrepancy in make between an automobile as described in a police radio transmission and the vehicle stopped by police.  *Kithcart*, 134 F.3d at 531.  On remand, however, the district court determined that the stop and "pat-down" search at issue could be justified by "reasonable suspicion" alone, and that such suspicion existed despite the discrepancy.  *Kithcart*, 169 F. Supp. 2d 369, 374-75 (E.D. Pa. 2001), *aff'd*, 34 Fed. App'x 872 (3d Cir. 2002).  We arrive at a similar conclusion.

not violate Defendant's constitutional rights.  Rather, his actions constituted good police work.  They provide no justification for the suppression of evidence later seized in the search of Defendant's automobile.  Accordingly, Defendant's Motion will be denied.

    An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-CR-295-02 |
| ANDRE COLEMAN | : | |

## **ORDER**

AND NOW, this 1st day of December, 2005, upon consideration of Defendant Andre Coleman's Motion To Suppress Physical Evidence (Doc. No. 43) and all papers filed in support thereof and in opposition thereto, and after a hearing in open court, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge