IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO.  05-295-2 |
| ANDRE COLEMAN | : | |

**SURRICK, J.**                                                    **MAY 17, 2007**

**MEMORANDUM & ORDER**

_____Presently before the Court is Defendant's Amended Motion For A New Trial Under Rule

33(a) Federal Rules Of Criminal Procedure (Doc. No. 121).  For the following reasons, the

Motion will be denied.

**I.       PROCEDURAL HISTORY & FACTUAL BACKGROUND**

On November 10, 2006, the jury returned a verdict, finding Defendant Andre Coleman

guilty on the following counts in the Second Superseding Indictment:

Count One:       Conspiracy to commit bank robbery in violation of 18 U.S.C. § 371;

Count Four:      Attempted bank robbery or aiding and abetting attempted bank robbery,
in violation of 18 U.S.C. §§ 2113(a) and 2, involving the PNC Bank at
1770 Market Street, Norristown, PA on November 22, 2004;

Count Five:      Bank robbery or aiding and abetting bank robbery, in violation of
18 U.S.C. §§ 2113(a) and 2, involving the Univest Bank, 40 East Street
Road, Feasterville, PA, on November 22, 2004;

Count Six:       Carrying a firearm during or in relation to a crime of violence or
aiding and abetting carrying a firearm during or in relation to a
crime of violence, involving the bank robbery of Univest Bank on
November 22, 2004, in violation of 18 U.S.C. §§ 924(c)(1) and 2.[1]

_____

[1]  The jury also found Defendant not guilty on the following counts:

Count Two:       Bank robbery or aiding and abetting bank robbery, in
violation of 18 U.S.C. §§ 2113(a) and 2, involving the Wachovia
Bank, 43 East Main Street, Norristown, PA, on November 1, 2004;

Defendant now contends that there was insufficient evidence to support the jury's verdict as to his convictions on Counts Four, Five and Six.

The testimony at trial was straightforward.[2]  The primary testimony against Defendant was provided by his son, co-Defendant Andre Thompson.[3]  From 2003 to early 2004, Defendant Andre Coleman and his son, Andre Thompson, lived together in Philadelphia.  (Tr. 2 at 39, 41.) During that time, they both worked for J.P. Mascaro, a waste removal company.  (*Id.* at 40.) Coleman worked as a supervisor, and Thompson worked as a trash collector.  (*Id.* at 40-41.) Their daily trash routes included parts of Bucks and Montgomery counties.  (*Id.* at 40.)  In early 2004, Thompson was fired from his job for repeated lateness and other disciplinary problems. (*Id.* at 41.)  Andre Coleman continued to work at J.P. Mascaro as a supervisor until October 2004, when he was laid off.  (*Id.* at 40-41.)  Neither Coleman nor Thompson were ever reinstated in their employment with Mascaro after they were terminated.  (*Id.* at 41.)

In need of money, Thompson approached Coleman on October 31, 2004 about robbing a bank.  (*Id.* at 42.)  Although Coleman initially dismissed the idea, Thompson convinced his

_____

Count Three:  Attempted bank robbery or aiding and abetting attempted bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, involving the PNC Bank, 1 West Main Street, Norristown, PA, on November 19, 2004;

Count Seven:  Possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

[2]  We will refer to the trial transcripts by numbers 1 through 3 as follows:
Tr. 1 - Nov. 7, 2006 (Doc. No. 107)
Tr. 2 - Nov. 8, 2006 (Doc. No. 108)
Tr. 3 - Nov. 9, 2006 (Doc. No. 109)

[3]  Andre Thompson testified against his father pursuant to a cooperation plea agreement with the Government.

father to go along with the plan.  That night, Thompson showed his father a burka, a traditional garment worn by Muslim women, that he planned to wear during the bank robbery as a disguise.

The next morning, November 1, 2004, Thompson and Coleman drove to Norristown, Pennsylvania in Coleman's black Infiniti automobile to rob a bank.  (*Id.* at 43.)  Thompson and Coleman chose Norristown because they were familiar with its roads from their time with J.P. Mascaro.  (*Id.* at 45-46.)  On the way to Norristown, Thompson put on the burka and wrote out a demand note.  (*Id.* at 46-47.)  When they arrived in Norristown, Coleman and Thompson decided to rob the Wachovia Bank located at 43 East Main Street.  (*Id.* at 47.)  Coleman pulled into the parking lot located across the street from the bank.  (*Id.*)  Thompson exited the vehicle and entered the bank.  (*Id.*)  After waiting in line for several minutes, Thompson approached the bank teller, Angela McClaind and handed her a demand note that said, "Sixty-thousand in cash, make it fast and nobody gets hurt."  (Tr. 1 at 9.)  McClaind immediately emptied her top cash drawer and handed Thompson the money.  (*Id.* at 9-10.)  Thompson demanded more, and she complied. (*Id.* at 11.)  Thompson placed the money in a black backpack, quickly exited the bank, and returned to the black Infiniti.  (Tr. 2 at 52.)  Coleman and Thompson left the area and proceeded to a friend's house in West Philadelphia where they counted the proceeds, which totaled $28,803.  (Tr. 1 at 23; Tr. 2 at 52.)  Over the next few weeks, Johnson and Coleman spent all of the proceeds from the robbery on stereo equipment, new accessories for Coleman's car, clothing, and marijuana.  (Tr. 2 at 52-53.)

A few weeks later, Coleman and Thompson were out of money and discussed robbing another bank.  This time, they enlisted the help of Darnell Thompson, a former co-worker from J.P. Mascaro, and Vivian Koroma, Andre Thompson's girlfriend.  (*Id.* at 53-55.)  On the

morning of November 19, 2004, the four agreed to rob the PNC Bank located at the intersection of Main and Swede Streets in Norristown.  (*Id.* at 55.)   They chose this bank because Darnell Thompson had an account at the bank and was familiar with its layout.  (*Id.*)  Before leaving for Norristown in Coleman's Infiniti, Andre Thompson wrote out two demand notes, one for himself and the other for Darnell.  (*Id.*)  When they arrived, Andre Thompson and Darnell Thompson exited the black Infiniti and entered the PNC Bank.  (*Id.* at 57.)  They entered the bank but quickly aborted the bank robbery attempt after a teller recognized Darnell and began looking at him suspiciously.  (*Id.*)  The two returned to Coleman's car, and fled the scene.  (*Id.*)  As they exited the parking lot, Andre Thompson noticed several police cars coming towards the PNC Bank with sirens on and lights flashing.  (*Id.*)

Several days later, Andre Thompson and Andre Coleman decided to rob another bank, this time without the help of Darnell Thompson.  (*Id.* at 59.)  On November 22, 2004, Coleman, Andre Thompson, and Vivian Koroma went to the PNC Bank located at 1770 Markley Street in Norristown, Pennsylvania.  (*Id.* at 59, 68.)  Before leaving for Norristown, Coleman asked Thompson if he wanted to bring Coleman's gun along with them this time, and Thompson agreed.  (*Id.* at 69-70.)  Thompson placed the gun in his jacket just before Thompson, Coleman and Koroma got into Coleman's Infinity.  (*Id.* at 70.)  While driving to Norristown, Thompson wrote out a demand note and emptied the bullets from the gun.  (*Id.* at 70-71, 73.)  He then placed the gun on the floor in the rear of the car, and placed the bullets in the passenger-side door compartment.  (*Id.*)  When they arrived at the PNC Bank in Norristown, Koroma volunteered to go into the bank first to scope it out.  (*Id.*)  When she returned, Thompson entered the bank, leaving the gun behind.  (*Id.*)  After waiting in line, Thompson approached Julian

Watson, a PNC bank teller, and handed him the demand note.  (*Id.* at 169.)  When Watson

hesitated, Thompson fled the bank without any money and returned to the car.  (*Id.* at 75.)

Frustrated, Thompson and Coleman agreed to try one more time that day.  (*Id.*)

      Coleman and Thompson were convinced that Watson had reported their attempted

robbery and decided to drive to Feasterville, Pennsylvania in search of another bank.  (*Id.*)

When they arrived in Feasterville, Coleman and Thompson decided to rob the Univest National

Bank located at 40 East Street Road.  (*Id.*)  Coleman pulled into the lower level of the Bank's

parking lot.  (*Id.* at 78.)  Koroma exited the vehicle first to scope out the bank for Thompson.

(*Id.* at 80.)  When Koroma returned, Thompson entered the bank, again without the gun, and

approached bank teller Sandra Gillespie.  (*Id.* at 176.)  Thompson handed her the demand note,

which stated, "40,000 on the counter, make it fast and quiet, no alarms, nobody gets hurt."  (*Id.*)

Gillespie misread the note and handed Thompson $40.  (*Id.*)  Thompson demanded more money,

and Gillespie handed over $4,255, including five marked $20 bait bills.  (*Id.* at 179.)  Thompson

exited the bank through the rear entrance and returned to the Infiniti, and Coleman sped away.

(*Id.* at 83.)

      Immediately after Thompson left the bank, Gillespie reported the robbery and the Bank

employees locked the door and called the police.  (*Id.* at 182.)  A radio message was sent out to

all local police departments to be on the lookout for a black Lexus with tinted windows

containing an African-American male and a female wearing a pink shirt.  (*Id.*)  Officer Kyle

Hartman of the Pennsylvania State Police received the flash message while patrolling the lower

Bucks County area.  (Tr. 2 at 215.)  Hartman spotted a vehicle fitting that description driving

south on Route 1 in Bucks County, made a quick u-turn, and followed Coleman's car.  (*Id.*)  As

Hartman drew near, Coleman pulled into a diner parking lot off of Route 1 and brought the Infinity to a stop.  (*Id.* at 220.)  Hartman pulled up behind the Infiniti.  At that point, Coleman jumped out of his vehicle and began to check the engine, which was smoking.  (*Id.*)  Hartman ordered Coleman back into the car, approached the driver side window, and asked Coleman for his license and registration.  (*Id.*)

Hartman observed that Coleman looked nervous and noticed Koroma sitting in the front seat wearing a pink shirt.  (*Id.* at 221.)  Believing that these may have been the Univest bank robbers, Hartman took Coleman's license and registration and returned to his car to call for back-up.  (*Id.* at 221-22.)  Hartman radioed the station and told them that Coleman's car fit the description of the vehicle used in the Univest robbery.  (*Id.*)  Officer John Krimmel of the Southampton Township Police, who was at the Univest Bank investigating the robbery, received this message.  (*Id.*)  Krimmel asked Gillespie and other bank employees to come with him for the purpose of identifying the occupants of the Infiniti.  (*Id.*)  When they arrived at the scene, Gillespie identified Coleman and Koroma as the two individuals involved in the robbery.  (Tr. 2 at 182-83.)  At that point, Thompson, Coleman, and Koroma were arrested, and the vehicle was towed to the Southampton police station.  (Tr. 3 at 6-9.)

During a search of the vehicle, the following items were seized:  a black Chicago White Sox baseball hat, a tan jacket and black gloves worn by Thompson during the robbery, a black duffel bag containing $4,255, including the $100 in bait money, an empty Ruger .357 magnum pistol on the floor behind the driver's seat, and six live rounds of .357 magnum ammunition wrapped in a tissue in the side of the front passenger side door.  (Tr. 3 at 9-15.)

Andre Coleman testified on his own behalf at trial and denied participation in any of the

bank robberies admitted by his son.  With regard to the November 1, 2004 bank robbery at the Wachovia Bank in Norristown, Defendant denied that he had driven his son to Norristown on that date and denied any knowledge of a bank robbery at the Wachovia Bank.  (Tr. 3 at 61.) With regard to the November 19, 2004 attempted bank robbery of the PNC Bank in Norristown, Defendant again denied that he had taken his son to Norristown on that date and denied any knowledge of a bank robbery at the PNC Bank.  (*Id.*)  Defendant admitted, however, that on November 22, 2004, he drove his son and Vivian Korona to Norristown and to Feasterville.  (*Id.* at 63-64.)  The purpose of the trip, he testified, was for his son to search for employment.  (*Id.*) Defendant denied any knowledge of the attempted bank robbery at the PNC Bank in Norristown on November 22, 2004 and denied any knowledge of the bank robbery of the Univest Bank in Feasterville on that date.  (*Id.* at 64-65.)  He also denied any knowledge of the presence of a gun in his car on November 22, 2004.  (*Id.* at 69.)  Evidently, the jury accepted the testimony of Andre Thompson with regard to the events of November 22, 2004 and rejected the testimony of Andre Coleman with regard to those events.  Accordingly, the jury found Defendant guilty on Counts One, Four, Five and Six of the Second Superseding Indictment.

## II.   LEGAL STANDARD

Defendant's Amended Motion For New Trial is filed pursuant to Federal Rule of Criminal Procedure 33(a).  Rule 33(a) provides that the court may exercise its discretion to grant a defendant a new trial if required in the interest of justice.[4]  Such motions should be granted sparingly and only where the failure to do so would result in a miscarriage of justice.

---

[4] Federal Rule of Criminal Procedure 33(a) provides, in pertinent part:  "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).

*See United States v. Copple,* 24 F.3d 535, 547 n.17 (3d Cir. 1994).  In considering a motion under Rule 33, "[t]he court may weigh the evidence, but may set aside the verdict and grant a new trial only if it determines that the verdict constitutes a miscarriage of justice, or if it determines that an error at trial had a substantial influence on the verdict."  *United States v. Enigwe,* Crim. A. No. 92-00257, 1992 WL 382325, at *4 (E.D. Pa. Dec. 9, 1992) (citation omitted).

## III.   LEGAL DISCUSSION

Defendant's Motion raises two issues for our consideration.  Initially, Defendant contends that there was insufficient evidence to support his conviction for carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c).  Next, Defendant argues that his convictions for bank robbery and attempted bank robbery should be overturned because the government failed to establish that these banks were federally insured.

Defendant's argument concerning his conviction under § 924(c) is two-fold.  First, Defendant claims that the Government failed to establish that Defendant knew that Andre Thompson had brought the gun with him in the car to the bank robbery.  Second, Defendant claims that even if Defendant knew that Thompson brought the gun with him to the robbery, the gun was not loaded and therefore was not a "component of the crime" and played only an "incidental" role in the robberies.

Section 924(c) provides in pertinent part:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime - [be sentenced to a certain number of years depending on the facts of the crime] . . . .

8

28 U.S.C. § 924(c)(1).  In *Muscarello v. United States*, 524 U.S. 125 (1998), the Supreme Court

analyzed the scope of § 924(c)'s "use or carry" provision.  The defendant in *Muscarello* claimed

that § 924(c) applied only to situations where the assailant was carrying a gun on his person

during the commission of a felony.  *Id.* at 132.  The Court rejected this argument, first noting that

"the Federal Courts of Appeals have unanimously concluded that 'carry' is not limited to the

carrying of weapons directly on the person but can include their carriage in a car."  *Id.* at 131

(citations omitted).  Next, the Court found that Congress intended for § 924(c) to have broad

meaning in order to "persuade the man who is tempted to commit a Federal felony to leave his

gun at home."  *Id.* at 132 (citing 114 Cong. Rec. 22231 (1968) (Rep. Poff)).  As the *Muscarello*

Court noted, "what sense would it make for this statute to penalize one who walks with a gun in

a bag to the site of a drug sale, but to ignore a similar individual who . . . travels to a similar site

with a similar gun in a similar bag, but instead of walking, drives there with the gun in his car?"

*Muscarello*, 524 U.S. at 132-33.

       In the case of *United States v. Williams*, 344 F.3d 365 (3d Cir. 2003), the Third Circuit

applied the *Muscarello* Court's broad interpretation of § 924(c)'s  "use or carry" provision.  In

*Williams*, the court quoted from *Muscarello* and stated, "[the term 'carry'] also applies to a

person who knowingly possesses and conveys firearms in a vehicle, including in the locked

glove compartment or trunk of a car, which the person accompanies."  *Id.* at 370 (citing

*Muscarello*, 524 U.S. at 126-27).  The *Williams* court also discussed § 924(c)'s "in relation to"

provision, concluding that the presence of a gun "could not be the result of accident or

coincidence, and the gun must have had 'some purpose or effect' as to, and must have at least

'facilitate[d], or [had] the potential of facilitating' the underlying offense."  *Id.* at 371 (quoting

*Smith v. United States*, 508 U.S. 223, 238 (1993)).  In *United States v. Warwick,* 167 F.3d 965

(6th Cir. 1999), the Sixth Circuit examined the breadth of the phrase "in relation to" in light of

*Smith v. United States*, 508 U.S. 223 (1993).  In considering the *Smith* Court's broad

interpretation of § 924(c), the Sixth Circuit observed that a court applying the "in relation to"

provision should:

> examine the "totality of the circumstances surrounding the commission  of the
> crime: the emboldened sallying forth, the execution of the transaction, the escape,
> and the likely response to contingencies that might have arisen during the
> commission of the crime". . .  Thus, a conviction under § 924(c)(1) will withstand
> appellate review if the evidence is sufficient to support a finding that the
> defendant intended to have the firearm available for use during or immediately
> following the transaction, or if it facilitated the crime . . .

*Warwick*, 167 F.3d at 971 (quoting and citing *United States v. Brown,* 915 F.2d 219, 226 (6th

Cir.1990)) (internal citations omitted).

Considering the broad scope of § 924(c), we are compelled to conclude that the evidence

in this case is clearly sufficient to establish the "use or carry" and the "in relation to" elements of

§ 924(c).  The gun's presence in Coleman's car was not the result of an accident or coincidence.

Just prior to leaving for the robbery on November 22, 2004, Defendant asked Andre Thompson

whether Thompson wanted to bring Defendant's gun with them to the bank robberies.

Thompson agreed and carried the gun into the car.  The fact that Thompson unloaded the gun

and left it in the car before entering the banks does not control the "use or carry" analysis under

§ 924(c).  The gun was in the car, available to be used, and Defendant knew it.  The purpose of §

924(c) is to "persuade the man who is tempted to commit a Federal felony to leave his gun at

home." *Muscarello*, 524 U.S. at 132 (citing 114 Cong. Rec. 22231 (1968) (Rep. Poff)).

Moreover, the Third Circuit has "consistently treated escape as part and parcel of a bank

robbery."  *See United States v. Bamberger,* 460 F.2d 1277, 1278 (3d Cir. 1972) (finding that

shooting that occurred a few blocks away from a bank robbery was "sufficiently related in time

and circumstances to the actual robbery" to be part of the robbery itself); *Gov't of the Virgin Is.*

*v. Dowling,* 633 F.2d 660, 668-69 (3d Cir. 1980) (holding that assaults occurring during "hot

pursuit" of a robbery occur "in committing" the crime).[5]  There is no question that Coleman and

Thompson were fleeing from the Univest Bank robbery at the time they pulled over on Route 1

and were eventually confronted by Officer Hartman.  Coleman's gun and bullets were well

within arm's reach of both Defendant and Thompson during their escape.  Either one of them

could have reloaded the gun and fired it at Officer Hartman as he approached their vehicle.

Based upon the evidence and testimony presented at the trial, the § 924(c) "use or carry" and "in

relation to" requirements are clearly established in this case.

       Next, Defendant claims that the Government failed to prove beyond a reasonable doubt

---

     [5] The other courts of appeals that have considered this question have similarly held that escape is a part of the bank robbery.  *See, e.g., United States v. Ashburn,* 20 F.3d 1336, 1341 (5th Cir. 1994) (noting, with approval, that "many courts . . . have found that the escape phase of the robbery can be considered part of the offense of bank robbery under various circumstances"), *relevant part reinstated,* 38 F.3d 803 (*en banc*); *United States v. Dinkane,* 17 F.3d 1192, 1200 (9th Cir. 1994) (noting that the escape phase is a part of bank robbery); *United States v. Muhammad,* 948 F.2d 1449, 1456 (6th Cir. 1991) ("As the crime of bank robbery cannot be completed without some form of flight or attempted flight, the crime is more naturally understood to include the act of fleeing and the immediate consequences of such flight."); *United States v. McCaskill,* 676 F.2d 995, 1000 (4th Cir. 1982) (concluding that the escape phase is a part of the bank robbery); *United States v. Willis,* 559 F.2d 443, 444 (5th Cir. 1977) ("[T]he robbery is not a consummate transaction until the immediate removal phase comes to a halt."); *United States v. Von Roeder,* 435 F.2d 1004, 1010 (10th Cir. 1970) ("[T]he escape phase of a crime is not . . . an event occurring 'after the robbery.'  It is part of the robbery.") (internal quotations and citation omitted)), *vacated on other grounds, Schreiner v. United States,* 404 U.S. 67 (1971); *see also United States v. Barlow,* 470 F.2d 1245, 1252-53 (D.C. Cir. 1972) ("The crime of larceny obviously continues as long as the asportation continues . . .").

that the PNC Bank and the Univest National Bank were insured by the Federal Deposit

Insurance Corporation ("FDIC") on November 22, 2004.  To sustain a conviction for bank

robbery or attempted bank robbery under § 2113(a), the Government must prove beyond a

reasonable doubt that the bank's deposits were insured by the FDIC.[6]  *United States v. Spinello*,

265 F.3d 150, 155 (3d Cir. 2001) (noting that § 2113(a)'s coverage is "limited to banks that are

members of the Federal Reserve or insured by the FDIC.").  To do so, "the government is not

required to produce the original records of the F.D.I.C. kept in Washington, D.C., but may

instead rely upon other admissible evidence to establish the federally insured status of the bank."

*United States v. Glover*, 394 F. Supp. 253, 256 (E.D. Pa. 1975) (citing *Kane v. United States*, 431

F.2d 172, 176 (8th Cir. 1970)).  Providing the testimony of a bank's employees or officers, as

well as supporting documentation are permissible methods for establishing a bank's FDIC-

insured status.  *Glover*, 394 F. Supp. at 258.

　　　　The Government offered the following evidence at Defendant's trial to establish that the

PNC Bank and Univest National Bank were FDIC insured.  Laurie Kane, an Investigator for

PNC Bank, testified as to PNC Bank's FDIC status.  Kane's responsibilities with PNC included

investigating losses to PNC Bank and serving as records custodian for PNC.  Kane testified that

---

[6] 28 U.S.C. §2113(a) provides in pertinent part:

(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than twenty years, or both.

28 U.S.C. § 2113(a).

12

all PNC Banks are insured by the FDIC and that the PNC Bank branch located at 1770 Markey

Street was insured by the FDIC from September 8, 1996 through November 22, 2004, the date of

Defendant's attempted robbery.  The Government also offered into evidence PNC Bank's

certificate of FDIC insurance.  (Def. Ex. G-8.)  Kane testified that the certificate covers all PNC

Bank branches in all eleven states in which PNC Bank operates and is maintained on the FDIC's

website, which she had checked the day before testifying.  (Tr. 2. at 2-5.)  With respect to the

Univest National Bank, the Government presented the testimony of David Schecter.  Schecter is

employed in the Corporate Security, Fraud Investigation and Bank Secrecy Act Compliance

department at Univest.  Schecter's day-to-day responsibilities included dealing with bank

robbery and applying for FDIC coverage for new Univest branches.  Referring to Univest's

FDIC insurance notification certificate, Schechter testified that the certificate was effective from

October 4, 2003 through November 22, 2004, and that it applied to the Univest branch located at

40 East Street Road in Feasterville.  (Tr 2. at 208-210, Ex. G-16.)  The testimony of Kane and

Schecter, coupled with the FDIC certificates, is clearly sufficient to establish that both banks

were FDIC insured on November 22, 2004.

## IV.   CONCLUSION

Defendant has failed to establish that the verdict in this case constituted a miscarriage of

justice.  In fact, the opposite is true.  The evidence presented by the Government here was

overwhelming.  The verdict of the jury was perfectly proper.  There was no miscarriage of

justice.  Defendant has also failed to identify any errors made at trial that substantially influenced

the verdict.  Accordingly, Defendant's Rule 33(a) motion must be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


UNITED STATES OF AMERICA          :
                                  :          CRIMINAL ACTION
                v.                :
                                  :          NO.  05-295-2
ANDRE COLEMAN                     :


**ORDER**


          AND NOW, this 17th day of ___May___, 2007, upon consideration of Defendant's

Amended Motion For A New Trial Under Rule 33(a) Federal Rules of Criminal Procedure (Doc.

No. 121), and all papers filed in support thereof and in opposition thereto, it is ORDERED that

the Motion is DENIED.

          IT IS SO ORDERED.



                                        BY THE COURT:



                                        _____
                                        R. Barclay Surrick, Judge