IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-295-2 |
| ANDRE COLEMAN | : | |

---

| | | |
|---|---|---|
| ANDRE COLEMAN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-2013 |
| UNITED STATES OF AMERICA | : | |

**SURRICK, J.**                                                    **APRIL  11 , 2012**

**<u>MEMORANDUM</u>**

Presently before the Court is Petitioner Andre Coleman's pro se Motion To Vacate, Set

Aside, Or Correct Sentence By A Person In Federal Custody under 28 U.S.C. § 2255.  (Pet'r's

Mem., ECF No. 141; Mot. to Permit, ECF No. 148.)[1]  For the following reasons, Petitioner's

Motion will be denied.

**I.       BACKGROUND**

On November 10, 2006, a jury found Petitioner guilty of four counts related to a series of

bank robberies in the Eastern District of Pennsylvania.  The jury found Petitioner guilty of

---

[1] Petitioner moved to supplement and amend his original motion, and included his amended claims in the context of his "Motion to Permit."  We permitted his amendment (Order, ECF No. 149), and we will consider the two motions together.  The Government has responded to each of these Motions.  (First Gov't Resp., ECF No. 146; Second Gov't. Resp., ECF No. 150.)  We have also considered Petitioner's Reply to the Government's Supplemental Opposition.  (ECF No. 152.)

(i) conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (Count One);

(ii) attempted bank robbery or aiding and abetting attempted bank robbery, in violation of 18

U.S.C. §§ 2113(a) and 2, related to the attempted November 22, 2004 robbery of a PNC Bank

branch at 1770 Market Street, Norristown, Pennsylvania (Count Four); (iii) bank robbery or

aiding and abetting bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, related to the

November 22, 2004 robbery of a Univest Bank branch, 40 East Street Road, Feasterville,

Pennsylvania (Count Five); and (iv) carrying a firearm during or in relation to a crime of

violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2, during the Univest Bank robbery (Count

Six).[2]

Petitioner moved for a judgment of acquittal and a new trial pursuant to Federal Rules of

Criminal Procedure 29 and 33.  (ECF No. 121.)  Petitioner's motions were denied.  (ECF No.

124.)  On June 7, 2007, Petitioner was sentenced to 360 months in prison, to be followed by five

years of supervised release.  (Judgment, ECF No. 130.)[3]  Petitioner appealed to the Third Circuit.

(ECF No. 132).  On December 11, 2008, the Third Circuit affirmed the judgment of sentence.

*United States v. Coleman*, 300 F. App'x 164 (3d Cir. 2008).  Petitioner now seeks collateral

relief pursuant to 28 U.S.C. § 2255.

---

[2] Petitioner was acquitted of (i) bank robbery or aiding and abetting bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, involving the Wachovia Bank, 43 East Main Street, Norristown, Pennsylvania, on November 1, 2004 (Count Two); (ii) attempted bank robbery or aiding and abetting attempted bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, involving the PNC Bank, 1 West Main Street, Norristown, Pennsylvania, on November 19, 2004 (Count Three); and (iii) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Seven).

[3] Based upon an Offense Level of 37 and a Criminal History Category of VI, Defendant's Sentencing Guideline Range was 360 months to life.  Defendant's criminal history included three prior robbery convictions and two prior drug convictions.  In addition, Defendant was on parole at the time of the instant offenses.

Petitioner raises eleven claims in his original and supplemental petitions.  Those claims are as follows:

1.   His trial counsel was ineffective for failing to seek dismissal of Petitioner's indictment under the Speedy Trial Act, 18 U.S.C. § 3161.  (Pet'r's Mem. 1.)

2.   The Court erred in failing to explain its reasoning for continuances granted pursuant to the requirements of § 3161(h)(7)(A).[4]  (*Id*. at 3.)

3.   Trial counsel was ineffective for failing to object to written communications with the jury, which the Court issued during deliberations.  (*Id*. at 6.)

4.   Trial counsel was ineffective for failing to move for dismissal of the indictment on the grounds that a witness during grand jury proceedings committed perjury, and the Government committed misconduct in presenting said witness to the grand jury.  (*Id*. at 8.)

5.   The Government committed misconduct by striking jurors based on race, in violation of the principle articulated in *Batson v. Kentucky*, 476 U.S. 79 (1986), and that Petitioner's counsel was ineffective for failing to challenge such strikes. (*Id*. at 14.)

---

[4] Petitioner refers repeatedly to 18 U.S.C. § 3161(h)(8), and the Government refers at one point to § 3161(h)(7)-(9).  (First Gov't Resp. 18.)  In 2008, Congress re-numbered the sub-headings of § 3161, eliminating (h)(5).  As a result, the sub-heading which Petitioner calls "(h)(8)" is, we assume from the substance of his argument, in fact "(h)(7)."  We assume that the Government is referring to § 3161(h)(6)-(8), since (h)(9) has been eliminated.  *See* Judicial Administration and Technical Amendments Act of 2008, Pub. L. 110-406, § 13, 122 Stat. 4291, 4294 (2008).

6.     Counsel was ineffective for failing to investigate the level of tint on the windows of his vehicle prior to the Court's resolution of Petitioner's motion to suppress the contents of that vehicle.  (*Id*. at 17.)

7.     Counsel was ineffective for failing to demand that the Court read jury instructions that Petitioner himself had composed.  (*Id*. at 19.)

8.     Counsel was ineffective for failing to attack a search warrant executed by the Government, and the underlying affidavit which justified that search warrant.  (*Id*. at 20.)

9.     Counsel was ineffective for failing to appeal Petitioner's conviction for firearm possession pursuant to 18 U.S.C. § 924(c).  (*Id*. at 23.)

10.     Counsel was ineffective for failing to respond to the Government's brief on appeal.  (*Id*. at 27.)

11.      Petitioner's bank robbery conviction was invalid because the Government did not meet a requisite element of the federal bank robbery statute, 18 U.S.C. § 2113.  (Mot. to Permit 5.)

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Relief under this provision is generally available "to protect against a fundamental defect which inherently results in a

complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989).  We review a prisoner's pro se petition liberally and with a measure of tolerance.  *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1999).

While the court may in its discretion hold an evidentiary hearing on a Section 2255 petition, *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989), such a hearing need not be held if the "motion and the files and records conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  That is the case here.

## III.   DISCUSSION

In order to succeed on a claim of ineffective assistance of counsel, "a habeas petitioner must show that his counsel's performance was deficient and that this deficient performance caused him prejudice." *Saranchak v. Beard*, 616 F.3d 292, 301 (3d Cir. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  In order to show that counsel's performance was deficient, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness, which means reasonableness under prevailing professional norms." *United States v. Smack*, 347 F.3d 533, 537 (3d Cir. 2003) (quoting *Strickland*, 466 U.S. at 688).  Prejudice is established only when the petitioner can show that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003) (quoting *Strickland*, 466 U.S. at 694).

A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *see also id.* ("Judicial scrutiny of counsel's performance must be highly deferential."); *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) ("*Strickland*'s standard, although not insurmountable, is highly demanding . . . Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ.").

### A.     Failure to Seek Dismissal Under Speedy Trial Act

Petitioner first claims that his trial counsel was ineffective for failing to seek dismissal of the indictment.  (Pet'r's Mem. 1.)  Petitioner asserts that his constitutional and statutory rights to a speedy trial were violated, and that these violations justified dismissal of the indictment.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  In determining whether a defendant's speedy trial rights have been violated, a court considers four factors.  Initially, the Court must examine the length of the delay between arrest or indictment–whichever is earlier–and the beginning of the trial.  *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *see also Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993).  A delay that is too long triggers an inquiry into the remaining three factors.  *Barker*, 407 U.S. at 530.  Absent a problematic delay, a court is not obligated to inquire further.  *Id.*   Where the delay is found to be presumptively prejudicial, a court must evaluate the claim in light of three additional factors:

(1) the reasons for the delay;  (2) whether and how the defendant asserted his right to a speedy

trial;   and (3) whether the delay prejudiced an interest which the right was designed to protect.

*Id.*[5]

The delay in bringing Petitioner to trial, which exceeded fourteen months, requires further

inquiry.  *See, e.g.*, *Hakeem*, 990 F.2d at 760 ("a fourteen and one-half month detention before

trial merits further inquiry"); *Wells v. Petsock*, 941 F.2d 253, 258 (3d Cir. 1991) (seven-month

pretrial incarceration triggers plenary inquiry into remaining *Barker* factors).  Such delay does

not necessarily indicate that prejudice exists; however, it requires that we evaluate Petitioner's

claim in light of the *Barker* factors.  *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).[6]

Delays in the Petitioner's trial were largely the product of "ends of justice" continuances

granted by the Court at Petitioner's request.  The Speedy Trial Act provides for a seventy-day

window between indictment and trial.  18 U.S.C. § 3161(c)(1).  When a trial does not begin

within that time, the indictment "shall be dismissed on motion of the defendant."  18 U.S.C. §

3162(a)(2).  However, the statute permits a court to grant continuances if doing so would serve

the "ends of justice."  18 U.S.C. § 3161(h)(7).  The periods of time covered by such continuances

are excluded from the calculation of the seventy-day window.  18 U.S.C. § 3161(h)(7)(A).

---

[5] The Supreme Court identified three such interests:  (i) the prevention of oppressive
pretrial incarceration;  (ii) minimizing the anxiety and concern of the accused;  and (iii) limiting
the possibility that the defense will be impaired.  *Barker*, 407 U.S. at 530.

[6] We note that Petitioner is barred from raising a substantive speedy trial claim. "Failure
of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to
dismissal under this section."  18 U.S.C. § 3162(a)(2). We analyze Petitioner's purported speedy
trial claim solely for the purpose of determining whether his ineffective assistance of counsel
claim has merit.

A court may consider a number of factors in determining whether an "ends of justice" continuance is appropriate.  The statute itself notes that one such factor is "whether the failure to grant such a continuance . . . would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."  18 U.S.C. § 3161(h)(7)(B)(iv).  The same sub-paragraph notes that a court should also consider whether failure to grant a continuance might "deny the defendant . . . continuity of counsel."  *Id.*

Prior to the commencement of Petitioner's trial, the Court granted eight continuances, six of which were granted at the request of defense counsel.[7]  While Petitioner claims that his 512-day delay was unreasonable, most of the period covered was, in fact, excludable for Speedy Trial Act purposes.  In requesting continuances, Petitioner's counsel cited the need for more time in order to adequately prepare for trial.[8]  Because defense counsel's readiness for trial was of paramount importance, counsel's requests for, and the Court's decisions to grant, "ends of

---

[7] Both Petitioner and the Government claim that seven continuances were requested, of which five were requested by Petitioner's counsel.  (Pet'r's Mem. 1, 3; First Gov't Resp. 16.)  There were eight continuances, six of which Petitioner's counsel requested.  Defense counsel was appointed pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, on June 13, 2005.  Counsel requested continuances on July 11, 2005 (ECF No. 23); September 2, 2005 (ECF No. 27); November 11, 2005 (ECF No. 37); December 28, 2005 (ECF No. 64); and August 10, 2006 (ECF No. 83).  The Government requested continuances on March 31, 2006 (ECF No. 77) and April 25, 2006 (ECF No. 79), to account for new developments in the case.  Defense counsel requested a one-day continuance and extension immediately prior to trial on November 3, 2006 (ECF No. 92), which was granted.

[8] On several occasions, counsel stated that he would require additional time to review discovery materials and consult with Petitioner about strategy.  (ECF Nos. 23, 27, 37.)  In other instances, counsel cited conflicting obligations, such as pending criminal trials for other clients, which interfered with his ability to prepare.  (ECF Nos. 64, 83.)

justice" continuances were reasonable.  Clearly, the "reasons for the delay" weigh against Petitioner's speedy trial claim.

The third *Barker* factor requires that we determine whether the defendant has asserted his right to a speedy trial.  "Failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."  *Barker*, 407 U.S. at 431.  While such failure "does not mean that he cannot claim that his right to a speedy trial was violated," it will be weighed against Defendant.  *United States v. Battis*, 589 F.3d 673, 681 (3d Cir. 2009).  Petitioner offers no evidence, and we are aware of none, which indicates that Petitioner attempted to assert the right during the long period of pretrial continuances.  Even if Petitioner had tried to assert that right, his counsel's requests for continuances indicate that Petitioner was not ready for trial.  *See Hakeem*, 990 F.2d at 764 ("Repeated assertions of the right do not . . . balance this factor in favor of a [defendant] when other actions indicate that he is unwilling or unready to go to trial"); *Battis*, 589 F.3d at 681 (giving less weight to defendant's speedy trial requests when defense counsel had asked for continuances).  Petitioner's failure to assert his right is not determinative; however, it adds to the substantial weight against the claim.

The final *Barker* factor also weighs against Petitioner.  Petitioner cannot establish that the delay caused prejudice to him.  Petitioner alleges that the delay allowed the Government more time to obtain the cooperation of his co-defendant.  (Pet'r's Mem. 3.)  Even assuming that Petitioner's argument is factually accurate, this would not affect the interests that the speedy trial right is intended to protect.  *See supra* note 5 (citing *Barker*, 407 U.S. at 530).  Petitioner's ability to prepare a defense was not adversely affected by the grant of continuances.  Rather, the majority of the continuances were granted for the express purpose of enabling Petitioner to

mount a more vigorous defense.  In addition, Petitioner cannot establish that the time of delay

was so exceedingly long as to trigger a presumption of prejudice and Petitioner cannot

demonstrate prejudice as a result of the delay.[9]  Under these circumstances, a fourteen-month

delay is not excessive.[10]  The delays were largely a product of defense counsel's strategy.  As a

result, Petitioner never asserted his right to a speedy trial.

Petitioner cannot demonstrate that defense counsel's decision to request continuances

pursuant to the Speedy Trial Act constituted deficient performance.  Competent counsel could

certainly have determined that hurrying unprepared into a federal criminal trial, in which

Petitioner faced a multi-count indictment and the possibility of life imprisonment, would be

unwise.  Throughout the pretrial period, Petitioner's counsel was actively litigating various issues

on behalf of Petitioner, including a motion to suppress physical evidence and a motion to dismiss

the indictment.  (ECF Nos. 43, 44.)  In electing to properly prepare for trial, rather than rushing

ill-prepared into a complex criminal trial, Petitioner's counsel acted within the bounds of

prevailing professional norms.  *See Strickland*, 466 U.S. at 688.  Because Petitioner's counsel's

approach was objectively reasonable, Petitioner's first claim is denied.

### B.    Court's Alleged Error in Granting Continuances

---

[9] In *Battis*, the Third Circuit found that a forty-five month delay would be considered "presumptively prejudicial," and shift the burden of demonstrating otherwise to the Government. 589 F.3d at 682.  The pretrial delay in the instant case was less than one-third that in *Battis*.  This delay was not excessive, in that it "presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify."  *Doggett*, 505 U.S. at 655-56.  We decline to apply any presumption of prejudice to Petitioner's claim.

[10] The pretrial delay in *Doggett*, for example, exceeded eight and a half years.  505 U.S. at 648.

Petitioner next alleges that the Court erred in not establishing in the record that the "ends of justice" required continuances under the Speedy Trial Act, as required by 18 U.S.C. § 3161(h)(7)(A).  Failure to set forth, either orally or in writing, findings that the "ends of justice" are served and outweigh the interests of the defendant and the public in a speedy trial, could render such delays non-excludable under the terms of the statute.  *See Zedner v. United States*, 547 U.S. 489, 506-09 (2006) ("The strategy of [§ 3161(h)(7)] is to counteract substantive openendedness with procedural strictness.").  However, a court's determinations under § 3161(h)(7) do not require excessive detail.  The Third Circuit has stated that a "district court's findings are generally sufficient if they track the language of the statute, and are based on factual assertions contained in one party's motion for a continuance."  *United States v. Thomas*, 322 F. App'x 177, 183 (3d Cir. 2009).

In the instant case, the Court properly set forth "ends of justice" determinations as to each of the eight continuances that were granted and the parties' motions explained the underlying reasons.[11]  Petitioner's claim that we did not do so lacks all merit.  Accordingly, Petitioner's second claim is denied.

### C.    Failure to Object to Written Communications to Jury

Petitioner next claims that his conviction on Count Six, for carrying a firearm during or in relation to a crime of violence, should be vacated.  Petitioner alleges that counsel was ineffective in not objecting to the Court's written answer to a question which the jury posed during its deliberations.  (Pet'r's Mem. 6.)  Specifically, Petitioner claims that the Court, in re-articulating

---

[11] (*See* ECF No. 25 (July 15, 2005); ECF No. 29 (Sept. 7, 2005); ECF No. 39 (Nov. 14, 2005); ECF No. 65 (Dec. 29, 2005); ECF No. 78 (Apr. 3, 2006); ECF No. 80 (Apr. 26, 2006); ECF No. 85 (Aug. 21, 2006); ECF No. 94 (Nov. 6, 2006).)

in writing the elements of 18 U.S.C. § 924(c)(1), omitted elements charged in the second superseding indictment.  (*See* Pet'r's Mem. Attach. A.)  Again, Petitioner's claim is without merit.

At the conclusion of testimony and after the arguments of Counsel, the Court properly instructed the jury on all aspects of this case including the elements of Count Six of the indictment.  (Trial Tr. 3.181-83, Nov. 9, 2006, ECF No. 109.)  It is presumed that jurors follow proper instructions from the Court.  *United States v. Lloyd*, 269 F.3d 228, 241 (3d Cir. 2001).  In this instance, the Court's written reply to the written question from the jury was worded in the exact same language as the formal charge.  This instruction, in both its oral and written forms, followed the text of the Third Circuit's Model Jury Instructions.[12]  *See* Model Criminal Jury Instructions, Third Circuit § 6.18.924A (2009 ed.).

Petitioner's counsel was not ineffective for failing to challenge the contents of a communication to jurors when such a challenge would have been meritless.  "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).  The Court's reply consisted of the charge given in Court, and closely tracked the language of the Third Circuit Model Jury Instructions.  Accordingly, Petitioner's third claim is without merit, and is denied.

**D.      Failure to Seek Dismissal Due to Allegedly Tainted Grand Jury Proceedings**

---

[12] Petitioner erroneously claims that the Court did not follow the Third Circuit's Model Instructions, and cites to instructions which list three elements of 18 U.S.C. § 924(c)(1), as opposed to two.  (*See* Pet'r's Mem. Attach. A.)  In fact, Petitioner cites to the "Modern Federal Jury Instructions – Criminal," not the Third Circuit's Model Instructions.

Petitioner argues that counsel was ineffective for failing to file a motion to dismiss the indictment due to a grand jury witness's later admission that he had committed perjury. (Pet'r's Mem. 8.) Specifically, Petitioner notes that his son, Andre Thompson, a co-conspirator turned Government witness, stated at trial that he "was not one hundred percent truthful" at the grand jury, and had not disclosed his participation in the November 1 and November 19, 2004 robberies. (Trial Tr. 2.151, Nov. 8, 2006, ECF No. 108.)

The Supreme Court has ruled that courts should not dismiss an indictment on such grounds unless "it is established that the violation substantially influenced the grand jury's decision to indict, or . . . there is grave doubt that the decision to indict was free from the substantial influence of such violations." *United States v. Soberon*, 929 F.2d 935, 939-40 (3d Cir. 1991) (citation omitted). "Misstatements or mistakes alone" cannot justify dismissal of an indictment. *United States v. Fisher*, 871 F.2d 444, 450 (3d Cir. 1989).

Petitioner cannot demonstrate that the grand jury's decision to indict was in any way affected by his son's misstatements or omissions. Petitioner offers no valid reason why the indictment should have been dismissed. Petitioner was indicted for the November 22, 2004 robbery prior to Andre Thompson's grand jury testimony. (*See* Indictment 2, ECF No. 10.) Thompson's statements, whether true or false, could not have had any impact on Petitioner's indictment because the indictment was handed down before Thompson testified.[13] The only possible relevance of Thompson's admission during trial that he had perjured himself was that it may have compromised his credibility before the jury. We noted this, and specifically instructed

---

[13] The Government later filed two superseding indictments. (ECF Nos. 67, 81.) This does not affect our analysis, since there is no reason to believe that the grand jury's decision to indict was affected by Thompson's testimony.

the jury that it should weigh Thompson's testimony "with great care."  (Trial Tr. 3.167, Nov. 9, 2006.)

Petitioner's counsel was not ineffective for failing to seek dismissal of the indictment on these grounds.  A motion to dismiss would have been denied, and counsel was not obligated to raise a meritless claim.  *Sanders*, 165 F.3d at 253.  Accordingly, Petitioner's fourth claim is denied.

### E.    Failure to Raise Claim Pursuant to *Batson v. Kentucky*

Petitioner next claims that counsel was ineffective for failing to challenge the Government's use of peremptory strikes during the jury selection process, based upon the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79 (1986).  In addition, Petitioner seeks relief on the grounds that the Government "committed prosecutorial misconduct" by striking African-American jurors in favor of an all-white jury.  (Pet'r's Mem. 14.)

To establish a *Batson* claim during the jury selection process, Petitioner must make a *prima facie* showing that a peremptory challenge was exercised by the Government on the basis of a *Batson*-proscribed category such as race.  If that showing has been made, the Government must offer a race-neutral basis for striking the juror in question.  The trial court must then determine whether the defendant has shown purposeful discrimination.  *Miller-El v. Cockerell*, 537 U.S. 322, 328-29 (2003).  The *Batson* framework necessarily depends on the trial court's evaluation of the Government's credibility, and "is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury process."  *Johnson v. California*, 545 U.S. 162, 172 (2005).

14

Petitioner offers no evidence that even a single juror was stricken on the basis of race.  As such, his claim of prosecutorial misconduct must fail.  There is no evidence in the record to support the argument that the Government used its peremptory challenges to strike African-Americans in violation of the Fourteenth Amendment's Equal Protection Clause.  "The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question." *Johnson*, 545 U.S. at 172.  Petitioner offers no reliable information as to the racial makeup of the jury or the jury pool.  Petitioner does not allege facts sufficient to establish a *prima facie* case under *Batson*.  Petitioner has provided no basis for raising a *Batson* claim.

Petitioner's claim that his counsel was ineffective for failing to raise the *Batson* issue is similarly without merit.  There is no evidence in the record to support the proposition that the Government's peremptory challenges were motivated by racial animus or other forbidden considerations.  Accordingly, defense counsel's decision not to object to the Government's peremptory challenges was reasonable.  We cannot assume that counsel's performance was deficient based solely on conjecture.

Since Petitioner offers no evidence to support his claim of racial bias in the jury selection process, his fifth claim is denied.

## F.    Failure to Investigate Prior to Suppression Hearing

Petitioner contends that counsel was ineffective for failing to investigate the shade of tint on the windows of his vehicle, which was stopped by the Pennsylvania State Police prior to Petitioner's arrest.  (Pet'r's Mem. 17.)  According to Petitioner, this failure to investigate undermined Petitioner's ability to argue that the stop, and consequent search of his vehicle,

violated the Fourth Amendment's protections against unreasonable searches and seizures.

Petitioner further alleges that counsel was deficient for failing to raise this issue at the pretrial

suppression stage.  (Pet'r's Mem. 19.)

When assessing an ineffective assistance of counsel claim for a failure to investigate, we

assess the decision not to investigate "for reasonableness in all the circumstances, applying a

heavy measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.  "Where

defense counsel's failure to litigate a Fourth Amendment claim competently is the principal

allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is

meritorious and that there is a reasonable probability that the verdict would have been different

absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman*, 477 U.S.

at 375.  However, a showing that a colorable Fourth Amendment claim exists will not, by itself,

justify a grant of relief.  "[A] good Fourth Amendment claim alone will not earn a prisoner

federal habeas relief.  Only those habeas petitioners who can prove under *Strickland* that they

have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ

and will be entitled to retrial without the challenged evidence."  *Id*. at 382.

On November 22, 2004, following the robbery of the Univest National Bank in

Feasterville, Pennsylvania, local police departments were informed over police radio to be on

alert for a black Lexus with tinted windows and two occupants–an African-American male and a

female wearing a pink shirt.[14]  (Trial Tr. 2.182, Nov. 8, 2006.)  Trooper Kyle Hartman of the

Pennsylvania State Police received the message while on patrol in lower Bucks County.  (*Id*. at

---

[14] This person was identified as Vivian Koroma, Andre Thompson's girlfriend.  (*See* Trial
Tr. 2.221, Nov. 8, 2006.)

2.215.)  Hartman spotted and began to follow a vehicle which roughly matched the description.[15]

He believed that the vehicle's tinted windows may have violated Pennsylvania law.  As Hartman

drew closer, Petitioner's vehicle pulled into a diner parking lot on Route 1 and stopped.  (*Id*. at

220.)  Petitioner jumped out of the vehicle and began to check the engine, which was smoking.

(*Id.*)  Hartman followed Petitioner's vehicle into the parking lot and directed Petitioner to get

back into his vehicle.  He then asked Petitioner for his license and registration, and informed him

that he would be issuing him a warning because his tinted windows violated the Motor Vehicle

Code.  (*Id*.; Supp. Hr'g Tr. 11, Nov. 29, 2005, ECF No. 61.)  Petitioner was later arrested, and his

vehicle was searched.  (Trial Tr. 3.6-15, Nov. 9, 2006.)  Among the items found during the

search were a black duffel bag containing $4,255, including $100 in marked "bait bills" from the

Univest branch, an empty Ruger .357 Magnum pistol, and six live rounds of .357 Magnum

ammunition.  (*Id*. at 9-15.)

Petitioner filed a motion to suppress the items seized during the search.  (ECF No. 43.)  A

hearing was held on the motion on November 29, 2005.  (ECF No. 58.)  Petitioner's motion was

denied.  (ECF No. 62.)  In our Memorandum, we noted:

> There is no dispute that Trooper Hartman's initial stop/detention of Defendant's vehicle
> was lawful.  The windows of the Infiniti were so darkly tinted that Trooper Hartman
> could not see inside.  (Supp. H'rg Tr. 8.)  Such tinting is a violation of the Pennsylvania
> Motor Vehicle Code, 75 Pa. Cons. Stat. § 4524(e)(1).  This violation provided a
> justification for stopping and/or detaining the vehicle for the purpose of issuing a warning
> or citation.  *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) ("A police
> officer who observes a violation of state traffic laws may lawfully stop the car committing
> the violation.")

(Op. on Mot. to Suppress 3, ECF No. 62.)

---

[15] The vehicle's make was in fact Infiniti, not Lexus.  (*See* Trial Tr. 3.9, Nov. 8, 2006; *see
also* Trial Exs. 17-A & 17-C.)

Petitioner cannot show the existence of a colorable Fourth Amendment claim. Notably, Petitioner does not claim that his windows were not darkly tinted. He does not argue that Hartman should have been able to see inside the vehicle. Although he faults counsel for failing to investigate the level of tint, he does not claim that the windows were not in violation of Pennsylvania's Motor Vehicle Code.

It is undisputed that the windows on Petitioner's vehicle were tinted. It is also undisputed that Trooper Hartman detained the vehicle because of the tinted windows. The suggestion that Counsel was ineffective because he did not investigate the extent of the tint is without merit. *Sanders*, 165 F.2d at 253. Petitioner's sixth claim lacks merit and is denied.

### G.      Failure to Submit Petitioner's Preferred Jury Instructions to Court

Petitioner next argues that counsel was ineffective for failing to ask the Court to instruct the jury in accordance with Petitioner's handwritten jury instructions. (Pet'r's Mem. 19.) Petitioner specifically wanted instructions which he had composed relating to his "theory of defense, guilt by association, and guilt of others" to be submitted to the jury. (*Id*.) Petitioner attached his three proposed instructions to his Petition. (Pet'r's Jury Instructions, Pet'r's Mem. Attach. A.)

"It is well settled that a trial judge has substantial discretion to select the language to be used in instructing the jury on the law so long as the judge's instructions are correct and do not omit essentials." *United States v. Tiller*, 302 F.3d 98, 105 (3d Cir. 2002). "No litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference." *Douglas v. Owens*, 50 F.3d 1226, 1233 (3d Cir. 1995). A district court "need not give [a] proposed instruction if essential points are covered by those given." *Grazier ex rel.*

*White v. City of Philadelphia*, 328 F.3d 120, 127 (3d Cir. 2003) (citation omitted).  A defendant is not entitled to prescribe the exact language of a theory-of-defense instruction.  *See, e.g.*, *United States v. Brooks*, 351 F. App'x 767, 774 (3d Cir. 2009).  Furthermore, the proper venue for advancing a defense theory is in counsel's presentation to the jury, not the Court's charge.  *See Grazier*, 328 F.3d at 127.

Petitioner's first proposed instruction sets forth his position that "promises not to prosicute [sic] and promises of immunity" motivated Thompson, his co-conspirator, to testify on behalf of the Government.  (Pet'r's Jury Instructions.)  We incorporated the essence of Petitioner's proposed instruction in the charge, noting that a "witness who realizes that he may be able to receive a lighter sentence by giving testimony favorable to the prosecution has a motive to falsify his testimony."  (Trial Tr. 3.167-68, Nov. 9, 2006.)  The Court's instruction may have, in fact, articulated the defense position that Thompson was motivated to lie in even stronger language than Petitioner's handwritten instructions.  In any event, the Court's charge was faithful both to the law and to the gist of Petitioner's first instruction.

Petitioner's second proposed instruction notes that "the possible guilt of others does not provide any basis for convicting the defendant."  (Pet'r's Jury Instructions.)  The Court's charge was similar, instructing the jury that they "are to draw no conclusions or inferences of any kind about the guilt of [Petitioner] from the fact that Mr. Thompson pled guilty to similar charges."  (Trial Tr. 3.187, Nov. 9, 2006.)  The Court's instruction covered Petitioner's proposed instruction, even if the language of the instruction was slightly different.

Petitioner's third, and final, proposed instruction revolves around his concern that he would be convicted based "merely [on] the fact that he is shown to have association with other

19

people who may have been guilty of wrongdoing." (Pet'r's Jury Instructions.)  The proposal

further requests that the jury be instructed that "this is especially important when members of a

particular ethnic group are accused in the same case of criminal conduct." (*Id*.)  The Court

instructed that "merely being present at the scene of a crime, or merely knowing that a crime is

being committed, is not sufficient conduct to find that the defendant conspired to commit the

crime." (Trial Tr. 3.178, Nov. 9, 2006.)  The only aspect of Petitioner's proposed instruction

which was not incorporated into the Court's charge is his request related to co-defendants of the

same ethnic background.[16]

     There is no basis for the claim that Petitioner's counsel provided ineffective

representation by failing to demand that Petitioner's proposed instructions be read.  The Court's

charge to the jury adequately incorporated both the spirit and substance of Petitioner's

handwritten statements.  The inclusion of Petitioner's additional instructions would have been

repetitive at best.  Because Petitioner's Sixth Amendment right to counsel does not compel

counsel to litigate frivolous motions, counsel did not act unreasonably in failing to seek the

introduction of Petitioner's instructions.  Accordingly, Petitioner's seventh claim is denied.

### H.    Failure to Challenge Validity of Search Warrant

---

[16] There is no basis for including this proposed instruction in a jury charge.  First, Petitioner offers no reason to believe that ethnic or racial associations might have played a role in the jury's deliberations, and we can find nothing in the record which suggests that such considerations affected the trial in any way.  Second, the core of this proposed instruction is reflected in the Court's instruction that the guilt of one defendant is irrelevant to the guilt of another.  (Trial Tr. 3.187, Nov. 9, 2006.)  Third, the Court instructed the jury that its verdict was not to be "based upon any bias, or any prejudice." (*Id*. at 3.189.)  Fourth, Petitioner provides, and we are aware of, no legal basis for the instruction submitted by Petitioner.

Petitioner claims that his counsel was ineffective for failing to "investigate and attack the veracity of the probable cause affidavit and [the] subsequent search warrant that followed." (Pet'r's Mem. 20.)  Petitioner refers to a warrant which allowed the Newtown Police Department to search the black 1991 Infiniti he was driving at the time of his arrest on November 22, 2004. Specifically, Petitioner argues that the inclusion, in the underlying affidavit, of reference to a different bank robbery in Newtown, Pennsylvania, on November 22, 2004, rendered the affidavit unreliable.[17]  (Pet'r's Mem. 21.)

Search warrants issued by a magistrate are generally presumed to be valid.  "Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness."  *United States v. Leon*, 468 U.S. 897, 922 (1984) (citation omitted).  In granting an application for a search warrant, a magistrate must have a "substantial basis" for concluding that probable cause was present.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  A magistrate determines the presence of probable cause based on the "totality of the circumstances."  *Id*. at 233.  The Supreme Court has explained that the "task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id*. at 238-39.  Furthermore, a "warrant may issue even in the absence of direct, first-hand evidence" linking the place to be searched with criminal activity.  *See United States v. Ritter*, 416 F.3d 256, 262 (3d Cir. 2005) (citations omitted).  A district court reviews challenges to the sufficiency of a search

---

[17] Petitioner was not connected to this robbery.

21

warrant application under a deferential standard and does not apply *de novo* review.  *See Gates*,

462 U.S. at 235.

Moreover, even if a warrant is issued on a problematic showing of probable cause, the

fruits of the search are not necessarily excluded.  In *Leon*, the Supreme Court articulated a good-

faith exception to the Fourth Amendment's exclusionary rule.  If law enforcement secures and

executes a warrant in good faith, the evidence is presumptively admissible even if the probable

cause determination may have been faulty.  *Id*.

There are, however, circumstances under which a law enforcement officer cannot

reasonably rely on a warrant.  The Third Circuit has identified four situations in which exclusion

is warranted, despite the existence of a warrant:

> (1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit;
>
> (2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function;
>
> (3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or
>
> (4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*United States v. Am. Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1106-07 (3d Cir. 1989)

(citations omitted).

Here, the purpose of the search warrant was to determine if Petitioner's car contained

evidence of the Univest robbery.  The affidavit underlying the search warrant was sworn to after

Petitioner and his passengers had been arrested.  The affidavit included details of the clothing

worn by Petitioner and the passengers, which matched descriptions previously available, as well

22

as the bank employees' positive identifications of Thompson and Koroma.  In light of the totality of the circumstances, the issuing authority had a "sufficient basis" to justify a search warrant for the vehicle.  The search warrant was based on probable cause.

The only possible concern with the affidavit is the inclusion of information about another bank robbery that had occurred on the same day in Newtown.  The inclusion of this information does not preclude the good faith execution of the warrant.  Petitioner asserts that the warrant was issued in reliance on a deliberately or recklessly false affidavit.  However, Petitioner offers no evidence to support this claim.  (Pet'r's Mem. 23.)  We have no reason to doubt the veracity of the affidavit.  Nor does the warrant fall within the other three exceptions to *Leon*, as we have no basis on which to call into question the integrity of the issuing magistrate, the quality of the indicia of probable cause, or the facial acceptability of the underlying affidavit.

Petitioner's counsel was not ineffective for failing to challenge the validity of the affidavit and search warrant.  The issuing judge had sufficient basis on which to grant a warrant.  Any errors in the affidavit were minor, and there is little doubt that the affidavit furnished probable cause to justify the search of Petitioner's vehicle.  Furthermore, law enforcement's execution of the warrant did not trigger any of the exceptions to the *Leon* good faith rule.  Had Petitioner's counsel sought to challenge the facial validity of the affidavit and warrant, he would not have prevailed, and the fruits of the search would not have been suppressed.  Because Petitioner's handling of the motion to suppress clearly falls within the range of what would be "considered sound trial strategy," *Strickland*, 466 U.S. at 689, Petitioner's eighth claim for relief is denied.

I.       **Failure to Appeal Conviction on Count Six**

23

Petitioner claims that counsel was ineffective for failing to appeal his conviction for carrying a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c). (Pet'r's Mem. 24-25.)  Specifically, Petitioner argues that counsel did not challenge the Court's ruling that a jury could have properly found his use of the firearm to be "in relation to" a crime of violence.  (*Id*. at 24.)  Petitioner alleges that this failure constitutes ineffective assistance of counsel.

Petitioner has a right to counsel on direct appeal.  *See Douglas v. California*, 372 U.S. 353 (1963).  However, Petitioner's counsel is not obligated to bring frivolous or weak claims on appeal.  "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (citation omitted).

Petitioner's counsel based his motion for a new trial in part on the allegation that the evidence was insufficient to convict Petitioner of Count Six.  (ECF No. 121.)  We denied the motion as lacking merit.  (Op. on Mot. for New Trial, ECF No. 124.)  In our denial, we cited to *United States v. Williams*, 344 F.3d 365 (3d Cir. 2003), which adopted a broad reading of 18 U.S.C. § 924(c).  We wrote that "[w]e are compelled to conclude that the evidence in this case is clearly sufficient to establish the 'use or carry' and the 'in relation to' elements of § 924(c)."  (Op. on Mot. for New Trial 10.)  The Third Circuit's opinion in *Williams* was based on the Supreme Court's ruling that the firearm must have "'facilitated, or had the potential of facilitating' the underlying offense."  *Williams*, 344 F.3d at 371 (quoting *Smith v. United States*, 508 U.S. 223, 238 (1993)).  (*See also* Op. on Mot. for New Trial 9-10.)  The Supreme Court has made it clear that the "in relation to" language is to be read expansively.  *Smith*, 508 U.S. at 237.

24

The Third Circuit's ruling in *Williams* was unambiguous.  *Williams* is strikingly similar to the instant case.  Petitioner's counsel was not unreasonable in choosing more meritorious issues for appeal.  Petitioner claims that his appeal "could have set a precedent on the gun conviction if presented correctly."  (Pet'r's Mem. 26.)  We find no basis for such an assertion, given the weight of the case law interpreting 18 U.S.C. § 924(c) and similar statutory language.  Counsel's decision to seek out better avenues for appeal did not render him ineffective.

"For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy."  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).  Petitioner's counsel pursued an array of defense options at and following trial, and determined that a direct appeal of the § 924(c) issue would be pointless given the current state of the law.  *See Smith v. Murray*, 477 U.S. 527, 536 (1986).  Petitioner's counsel did not act unreasonably in failing to raise on appeal the validity of Petitioner's conviction under 18 U.S.C. § 924(c).  Accordingly, Petitioner's ninth claim is denied.

**J.      Failure to Respond to Government's Brief on Appeal**

Petitioner claims that his counsel was ineffective for failing to respond to the Government's reply brief on appeal to the Third Circuit.  (Pet'r's Mem. 27.)  Petitioner points to what he claims are two errors in the Government's brief that necessitated a response.  Specifically, he argues that the Government claimed that Petitioner and Thompson wrote out demand notes, and that they discussed bringing in a third person.  (*Id*. at 27-28.)  Petitioner claims that these were misrepresentations, and that counsel's failure to correct the record rose to the level of ineffective

assistance of counsel.  Petitioner further claims that counsel should have appealed his conviction on Count Six in a reply to the Government's response brief.[18]  (*Id*. at 28.)

Petitioner fails to explain how not replying to these two statements constituted ineffective assistance of counsel.  These statements were decidedly not material.  They did not concern elements of the crime.  They were also not relevant to the issues raised on appeal, which concerned whether the Government had established that the banks were in fact federally insured, and the specifics of Petitioner's sentencing.  Counsel was not obligated to respond to every disputed factual premise raised by the Government, and his failure to do so hardly reflects negatively on the representation afforded Petitioner.

Petitioner's counsel did not depart from the standards of professional norms in not responding to minor differences of fact raised in the Government's reply brief.  Therefore, we find no basis on which to sustain Petitioner's claim.  Accordingly, Petitioner's tenth claim is denied.

### K.    Sufficiency of Evidence to Sustain Convictions on Counts Four and Five

Petitioner's final claim, raised in his supplemental memorandum, consists of two distinct sub-claims.  (Mot. to Permit 3.)[19]  First, Petitioner states that the indictment did not mention, and the Government did not prove at trial, that "either bank was a member bank of the Federal Reserve System," which would purportedly require us to vacate his convictions.[20]  (*Id*. at 1.)

---

[18] We addressed, and denied, an identical claim in the previous sub-section.  We will not address Petitioner's argument as to counsel's failure to re-raise Count Six.

[19] Because of irregular pagination in Petitioner's supplemental memorandum, we will refer to specific locations according to the page numbers assigned them in the Electronic Court Filing (ECF) system.

[20] Petitioner alleges that the banks were not members of the Federal Reserve System, which is in fact true.  However, Petitioner misstates the standard.  If the banks in question were

Second, Petitioner claims that defense counsel was ineffective for failing to seek dismissal of the indictment or move for a new trial on these grounds.  (*Id*.)

To sustain a conviction for bank robbery or attempted bank robbery under 18 U.S.C. § 2113(a), the Government must prove beyond a reasonable doubt that the bank's deposits were insured by the FDIC.  18 U.S.C. § 2113(f)[21]; *see also United States v. Spinello*, 265 F.3d 150, 155 (3d Cir. 2001) (noting that § 2113(a)'s coverage is "limited to banks that are members of the Federal Reserve or insured by the FDIC").  The Government is not required to produce the original FDIC records that are kept in Washington, D.C., but may rely on other admissible evidence to establish the bank's status as federally insured.  *United States v. Glover*, 394 F. Supp. 253, 256 (E.D. Pa. 1975) (citing *Kane v. United States*, 431 F.2d 172, 176 (8th Cir. 1970)).

Addressing first Petitioner's claim that the indictment did not mention the status of the banks in question as federally insured, this argument is simply wrong.  The second superseding indictment charged Petitioner with four distinct bank robberies or attempted bank robberies at

---

neither members of the Federal Reserve System nor insured by the Federal Deposit Insurance Corporation ("FDIC"), the convictions would be defective.

[21] 18 U.S.C. § 2113(f) states:

As used in this section the term "bank" means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, including a branch or agency of a foreign bank (as such terms are defined in paragraphs (1) and (3) of section 1(b) of the International Banking Act of 1978), and any institution the deposits of which are insured by the Federal Deposit Insurance Corporation.

four different banks.  Each bank was federally insured.  The second superseding indictment states

explicitly that each of the four banks' deposits are insured by the FDIC.[22]  (ECF No. 81 at 7-10.)

Petitioner's claim that the Government failed to prove, at trial, that the banks in question

were FDIC-insured is meritless.[23]  At trial, the Government offered overwhelming evidence to

establish this element.  First, Laurie Kane, an Investigator for PNC Bank, testified to PNC Bank's

FDIC status.  Kane's responsibilities included investigating losses to PNC Bank, and serving as its

custodian of records.  Kane testified that all PNC Bank branches are FDIC-insured, and that the

branch located at 1770 Market Street, Norristown, Pennsylvania, was insured from September 8,

1996 through November 22, 2004, the date of the attempted robbery.  (Trial Tr. 2.2-5, Nov. 8,

2006.)  The Government offered into evidence PNC Bank's certificate of FDIC insurance.  (Trial

Ex. G-8.)  There is no question that this evidence satisfied the Government's burden as to Count

Four.

Second, the Government presented the testimony of David Schecter, who works in Univest

National Bank's Corporate Security department.  Schecter's daily responsibilities included

addressing bank robberies and applying for FDIC coverage for new Univest branches.  Schechter

testified that the certificate was effective from October 4, 2003 through November 22, 2004, the

---

[22] (*See* Second Superseding Indictment 7, ECF No. 81("Wachovia Bank, the deposits of which were and are insured by the Federal Deposit Insurance Corporation."); *id*. at 8 ("PNC Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation."); *id*. at 9 ("PNC Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation; *id*. at 10 ("the Univest National Bank, the deposits of which were and are insured by the Federal Deposit Insurance Corporation.").)

[23] Petitioner was acquitted on Counts Two and Three.  Therefore, it is not necessary to review the evidence which establishes that the banks discussed therein were in fact FDIC-insured.

day of the robbery.  Schecter noted that the certificate applied to the Univest branch located at 40 East Street Road, Feasterville, Pennsylvania.  (Trial Tr. 2.208-10, Nov. 8, 2006.)  Schecter further presented the bank's FDIC certificate.  (Trial Ex. G-16.)  There is no question that this evidence satisfied the Government's burden as to Count Five.

Accordingly, Petitioner's final claim is denied.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner's Motion will be denied.  Since Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), no certificate of appealability will be issued.

An appropriate Order follows.


                                        **BY THE COURT:**


                                        _____

                                        **R. BARCLAY SURRICK, J.**