IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 05-295-2 |
| ANDRE COLEMAN : | |

## MEMORANDUM

**SURRICK, J.**                                                                           **JANUARY 6, 2021**

      Andre Coleman has served approximately 60% of his 360-month sentence for robbery and attempted robbery.  He seeks a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 180.)  Coleman argues that he suffers from underlying medical conditions that place him at a high risk of severe illness or death from the current global pandemic of COVID-19.  He also contends that his extensive rehabilitation while incarcerated counsels in favor of release.  For the reasons that follow, Coleman's Motion will be granted.

**I.     BACKGROUND**

      Coleman is 60 years old.  He suffers from bradycardia (slow heartbeat), obesity, hypertension, and hyperlipidemia/high cholesterol. He also has a history of tuberculosis.

      On November 10, 2006, a jury found Coleman guilty of four counts related to a series of bank robberies in the Eastern District of Pennsylvania. The jury found Coleman guilty of conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371; attempted bank robbery or aiding and abetting attempted bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2; bank robbery or aiding and abetting bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2; and carrying a firearm during or in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1) and 2.  (ECF No. 162.)

Coleman was sentenced to 360 months' imprisonment, to be followed by five years of supervised release. (ECF No. 130.) This significant prison sentence resulted from a finding based on prior convictions that Coleman was a career offender. (Presentence Report "PSR" 8 (on file with Court).) Factoring in earned good conduct time of approximately 22 months, Coleman has served 215 (60%) of his 360-month sentence.

In support of his motion for a compassionate release, Coleman argues that his underlying health conditions place him at risk of serious illness or death in light of the global pandemic caused by COVID-19. He also contends that a compassionate release is justified due to his demonstrated good behavior and rehabilitate efforts, which are shown by numerous letters submitted to the Court. These letters are from family members, correctional officers, and prison staff. They not only reveal the remarkable rehabilitation that Coleman has achieved during his over fifteen years in prison, but also his non-violent character.

## II.     DISCUSSION

### A.     Applicable Law

Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies. In relevant part, § 3582(c)(1) provides that a court:

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).[1]

The phrase "extraordinary and compelling reasons" is not defined by the statute, but instead incorporates the commentary to the policy statement contained in § 1B1.13 of the United States Sentencing Guidelines.  *See United States v. Handerhan*, 789 F. App'x 924, 925 (3d Cir. 2019) (citing *United States v. Barberena*, 694 F.3d 514, 521 n.10 (3d Cir. 2012).  Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), that—
>
> > (1) (A) Extraordinary and compelling reasons warrant the reduction;  . . .
> > (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 provides four categories of reasons that qualify as extraordinary and compelling:  (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; or (4) "other reasons" to be determined by the Director of the BOP.  As a result of amendments to § 3582(c)(1)(A) by the First Step Act, courts now conclude that the catch-all category of "other reasons" applies not only to the BOP Director, but also to courts.  *See United States v. Towel*, No. 17-519-6, 2020 WL 2992528, at *3 (E.D. Pa.

---

[1] To exhaust administrative requirements, the statute requires that a defendant first "request" that the BOP file a motion with the court for compassionate release on his behalf. Only after the defendant has exhausted the administrative rights to appeal the BOP's denial of that request, or after 30 days has passed, whichever is earlier, may the defendant then file his own motion with the court.  18 U.S.C. § 3582(c)(1)(A); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (stating that remand of request for compassionate release to district court for substantive review in light of COVID-19 pandemic would be "futile" because the defendant had not complied with the exhaustion requirements under Section 3582).  Coleman has complied with the exhaustion requirements of § 3582(c)(1)(A).  On April 27, 2020, the Warden at FCI Ray Brook denied Coleman's request for compassionate release.  (Def.'s Mot. Ex. B.)

June 4, 2020); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 399 (E.D. Pa. Apr. 1, 2020) (noting that the Sentencing Commission's "old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)").

A legal standard for reviewing compassionate release requests in the context of the COVID-19 pandemic may be distilled from a synthesis of the statute, the Sentencing Guidelines, and recent court decisions. Courts faced with motions for compassionate release due to COVID-19 consider: (1) whether "extraordinary and compelling" reasons exist to reduce the defendant's sentence; (2) whether the defendant is a danger to the community under § 3142(g); and (3) whether the § 3553(a) sentencing factors support a sentence reduction. *See United States v. Pabon*, 458 F. Supp. 3d 396, 300 (E.D. Pa. 2020); *United States v. Mathe*, No. 14-528, 2020 WL 3542177, at *3 (E.D. Pa. June 30, 2020); *United States v. Hannigan*, No. 19-373, 2020 WL 4015238, at *3 (E.D. Pa. July 16, 2020).

To establish "extraordinary and compelling reasons," courts have generally required defendants to show two things: (1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed. *See United States v. Somerville*, 463 F. Supp. 3d 585, 596-97 (W.D. Pa. 2020) (citing cases).

**B.  Extraordinary and Compelling Reasons**

Coleman argues that his serious underlying medical conditions-- namely, bradycardia (heartbeat), obesity, hypertension, hyperlipidemia/high cholesterol, and history of tuberculosis—place him at an increased risk of death or serious illness if he were to contract COVID-19. The Government concedes that extraordinary and compelling reasons are present. Specifically, the

Government acknowledges that Coleman's obesity is a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19. Coleman has a body mass index ("BMI") of 35.6. The CDC recognizes that "obesity," which is having a BMI of 30 or greater, increases a person's risk of severe illness from COVID-19.[2] Coleman's high blood pressure also places him at an increased risk. In addition, FCI Ray Brook is currently experiencing an increase in COVID-19 cases. At the time of this Memorandum, 40 inmates (out of 746 total inmates housed at FCI Ray Brook) have tested positive for COVID-19. *See* https://www.bop.gov/coronavirus/ (last accessed Jan. 6, 2020). Two staff members have also tested positive. *Id*. We are satisfied that Coleman has presented extraordinary and compelling reasons justifying a reduction in his sentence. Nevertheless, we must also consider the § 3535 sentencing factors.

### C.   Danger to the Community and Sentencing Factors under § 3553(a)

In addition to considering whether extraordinary and compelling reasons justify the release, we must consider whether Coleman is a danger to the community under § 3142(g), and whether the § 3553(a) sentencing factors support a sentence reduction. *See* U.S.S.G. § 1B1.13. The Government argues that even though Coleman's medical conditions place him at an increased risk, his compassionate release should nevertheless be denied because Coleman continues to be a danger to society and because the sentencing factors support denying relief. We disagree.

"[B]efore granting compassionate release, a district court must consider the factors set forth in 18 U.S.C. § 3535(a) to the extent that they are applicable." *United States v. Pawlowski*,

---

[2] *See* Centers for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Jan. 5, 2020).

967 F.3d 327, 329 (3d Cir. 2020) (internal quotations and citations omitted); *see also* U.S.S.G. § 1B1.13.  The sentencing factors courts consider include:  the "nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1); the "history and characteristics of the defendant," *id*.; and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . to afford adequate deterrence to criminal conduct, [and] to protect the public from further crimes of the defendant" *id*. § 3553(a)(2)(A)-(C).  Courts must also consider whether the defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

      The charges here are very serious.  18 U.S.C. § 3553(a)(1). Coleman was found guilty of robbing a bank and attempting to rob another bank.  A firearm was used in the robbery.  Coleman acted as the getaway driver.  However, these crimes were committed a long time ago.  Coleman has already spent fifteen years in prison—a substantial punishment for these serious crimes.  This significant amount of prison time reflects the seriousness of Coleman's crimes, promotes respect for the law, serves as a just punishment, and demonstrates appropriate general and specific deterrence for future robbery crimes.  *See* 18 U.S.C. § 3553(a)(2)(A)-(C).

      There is nothing in this record to suggest that Coleman is presently a danger to others if he were released from prison.  18 U.S.C. § 3553(a)(2)(C); see also U.S.S.G. § 1B1.13(2) (stating that before a reducing a sentence, the court must be assured that "the defendant is not a danger to the safety of any other person or to the community").  Coleman's criminal history includes two prior drug dealing charges and three prior robberies.  However, these crimes were committed over three decades ago.  We must consider "the most up to date picture" of Coleman's history and characteristics to determine whether he will engage in future criminal conduct.  *Pepper v. United States*, 562 U.S. 476, 492 (2011).  Coleman has not had one infraction in prison in over

6

ten years. Moreover, numerous corrections officers and prison staff—all of whom are in the unique position to witness Coleman firsthand—have advised that he is a "model inmate" who "has never displayed signs of being violent or aggressive," "holds himself in a dignified way and has always been respectful to both staff and other inmates." (Def. Mot. Ex. C.)

Finally, Coleman has undergone a remarkable transformation over the last fifteen years of his incarceration. *See Pepper*, 562 U.S. at 491 ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."). Coleman has taken numerous classes and programs to better himself and prepare for life outside of prison. He has maintained a job has head orderly, for which he has received outstanding reviews. He is described as a hard-working, dependable, admirable, and as a mentor to the younger inmates. We have received over a dozen letters from prison staff, including correctional officers, case managers, and counselors. All of these letters praise Coleman for his efforts in rehabilitating himself. They also reveal his positivity, despite serving a lengthy prison sentence, and his desire to help other inmates. Coleman's case manager stated that he "can affirm that [Coleman] stands out as being a model inmate" who is "motivated to help others without the expectation of reward or gain." (Def's Mot. Ex. C.) This Court has received numerous compassionate release requests from inmates across the country. We have never seen such an outpouring of support from prison staff for an inmate.

The letters we have received from family members reveal that Coleman's family is committed to supporting him through his transition out of prison. Coleman intends to live with his sister, Arlita Coleman, and her family in Philadelphia.

After balancing the § 3553(a) sentencing factors, we are convinced that Coleman is entitled to a compassionate release.

### III.    CONCLUSION

For these reasons, Coleman's request for a compassionate release is granted. His sentence will be reduced to time served.

An Appropriate Order follows.

                                      **BY THE COURT:**

                                      */s/ R. Barclay Surrick*
                                      **R. BARCLAY SURRICK, J.**